JAMES AND CHARLOTTE COKER, ROBERT AND REBECCA DARCONTE, AND DONALD AND BONITA SHOE, PLAINTIFFS v. DAIMLERCHRYSLER CORPORATION, DEFENDANT

No. COA04-523

(Filed 16 August 2005)

## 1. Pleadings— judgment on—standard of review

Judgment on the pleadings is proper when all of the material issues of fact are admitted in the pleadings and only questions of law remain. Appellate review of judgments on the pleadings determines whether moving parties have shown that no material issue of fact exists on the pleadings and that the moving parties are clearly entitled to judgment.

**COKER v. DAIMLERCHRYSLER CORP.**

[172 N.C. App. 386 (2005)]

**2. Appeal and Error— judgment on pleadings—de novo review**

Appellate review of a Business Court order granting judgment on the pleadings for defendant is de novo.

**3. Jurisdiction— standing—injury in fact**

Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction; whether standing exists most often turns on whether the party has alleged an injury in fact in light of the applicable statutes or case law. Plaintiffs here alleged that defendant should have installed brake shift interlock devices on minivans marketed as the safest in the world; however, the sole remedy plaintiffs seek is for possible future expenses not yet incurred. Their claims are too speculative and illusory to show a legal injury in fact.

Judge HUDSON dissenting.

Appeal by plaintiffs from order entered 5 January 2004 by Judge Ben F. Tennille in Rowan County Superior Court. Heard in the Court of Appeals 25 January 2005.

*Mauriello Law Offices, by Christopher D. Mauriello; and Wallace and Graham, PA, by Marc P. Madonia, for plaintiffs-appellants.*

*Smith Moore LLP, by Sidney S. Eagles, Jr. and Allison O. Van Laningham; and Bush Seyferth Kethledge & Paige PLLC, by Raymond M. Kethledge, Troy, Michigan, pro hac vice, for defendant-appellee.*

TYSON, Judge.

James and Charlotte Coker, Robert and Rebecca Darconte, and Donald and Bonita Shoe (collectively, "plaintiffs") appeal order granting judgment on the pleadings to DaimlerChrysler Corporation ("defendant"). We affirm.

I. Background

On 8 May 2001, plaintiffs filed an amended complaint against defendant as owners of model years 1995 through 2000 minivans manufactured by defendant. These minivans did not include a brake shift interlock device ("BSI"). Plaintiffs sought damages to install BSIs, to compel defendant to both notify its customers of the lack of BSIs and

install·them, treble damages, attorneys' fees, compensatory damages, punitive damages, interest, and costs of suit.

Plaintiffs' amended complaint defines a BSI as "a device that prevents a vehicle with an automatic transmission from being moved out of 'park,' which keeps the transmission from being engaged, until the driver depresses the brake pedal." Plaintiffs assert the BSI ensures that "the vehicle is not inadvertently moved into reverse or drive, whether by a driver or a passenger, including a child who may attempt to move the transmission lever while playing in the vehicle."

Plaintiffs allege defendant promoted its minivans to be the "safest in the world" and emphasized their vehicles go "beyond government requirements to ensure that the best available safety devices are used to protect its customers." Plaintiffs argue defendant intentionally failed to disclose to its customers that its minivans for the years stated did not include BSIs. Plaintiffs assert defendant declined to include BSIs despite both its own safety leadership team recommending them and that BSIs were becoming an industry standard. Plaintiffs also allege defendant continued to market its minivans as "the safest in the world" even without installing BSIs.

Plaintiffs' amended complaint sought recovery for: (1) violations of the North Carolina Unfair and Deceptive Trade Practices Act ("NC UDTPA"); and (2) common law fraud and demanded: (1) compensation for their "ascertainable loss" which "includes the cost of installing the BSI in Chrysler minivans and/or the difference in value between minivans with the BSI and those without it;" and (2) defendant "to install the BSI in the minivans of Plaintiffs and Class members."

Plaintiffs expressly excluded from their amended complaint any allegation of personal injury or property damage. Plaintiffs also did not allege: (1) they had already installed the BSIs and were seeking reimbursement compensation; (2) they sold, or attempted to sell, their vehicles at a diminished price; (3) they have ever "inadvertently moved [their vehicles] into reverse or drive;" or (4) their vehicles have been damaged by any "inadvertent" shifting into reverse or drive.

On 15 April 2003, the Chief Justice of the North Carolina Supreme Court designated this case as a complex business matter under Rules 2.1 and 2.2 of the North Carolina General Rules of Practice, and referred it to the North Carolina Business Court ("Business Court"). On 20 April 2003, defendant filed a motion for judgment on the plead-

ings under Rule 12(c) of the North Carolina Rules of Civil Procedure. Plaintiffs filed a "motion" and memorandum in opposition. Following oral argument, the Business Court concluded: (1) plaintiffs lack standing to bring the action since they have suffered no injury in fact; (2) the economic loss rule bars plaintiffs' claims; and (3) plaintiffs' claims are preempted and barred by the doctrine of primary jurisdiction. It entered an "Opinion and Order" on 5 January 2004 granting defendant's motion and dismissing plaintiffs' claims. Plaintiffs appeal.

## II. Issue

The issue before this Court is whether the trial court erred in granting defendant's motion for judgment on the pleadings under Rule 12(c) of the North Carolina Rules of Civil Procedure.

## III. Abandoned Assignments of Error

Plaintiffs voluntarily abandoned assignment of error number three, regarding preemption by the National Traffic and Motor Vehicle and Safety Act of 1966, and number four, preemption under the doctrine of primary jurisdiction. *See* N.C.R. App. P. 28(b)(6) (2004). These assignments of error are dismissed.

## IV. Standard of Review

[1] Plaintiffs argue the Business Court erred in granting defendant's motion for judgment on the pleadings when it concluded: (1) plaintiffs lack standing; and (2) plaintiffs' claims are barred by the economic loss doctrine.

Under a motion for judgment on the pleadings:

[t]he trial court may consider, "only the pleadings and exhibits which are attached and incorporated into the pleadings" in ruling on the motion. *Helms v. Holland*, 124 N.C. App. 629, 633, 478 S.E.2d 513, 516 (1996) (citing *Minor v. Minor*, 70 N.C. App. 76, 78, 318 S.E.2d 865, 867, *disc. rev. denied*, 312 N.C. 495, 322 S.E.2d 558 (1984)). " 'No evidence is to be heard, and the trial judge is not to consider statements of fact in the briefs of the parties or the testimony of allegations by the parties in different proceedings.' " *Helms*, 124 N.C. App. at 633, 478 S.E.2d at 516 (quoting *Minor*, 70 N.C. App. at 78, 318 S.E.2d at 867).

*Davis v. Durham Mental Health/Development Disabilities/ Substance Abuse Area Auth.*, 165 N.C. App. 100, 104, 598 S.E.2d 237, 240 (2004).

The purpose of Rule 12(c) is "to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974); *see* N.C. Gen. Stat. § 1A-1, Rule 12(c) (2003). Judgment on the pleadings is proper when all of the material issues of fact are admitted in the pleadings, and only questions of law remain. *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499.

This Court reviews such a grant by determining "whether the moving party has shown that no material issue of fact exists upon the pleadings and that he is clearly entitled to judgment." *Affordable Care, Inc. v. N.C. State Bd. of Dental Exam'rs*, 153 N.C. App. 527, 532, 571 S.E.2d 52, 57 (2002) (citing *Garrett v. Winfree*, 120 N.C. App. 689, 463 S.E.2d 411 (1995)). "All factual allegations in the non-movant's pleadings are deemed admitted except those that are legally impossible or not admissible in evidence." *Governor's Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 247, 567 S.E.2d 781, 786 (2002) (citing *Cheape v. Town of Chapel Hill*, 320 N.C. 549, 359 S.E.2d 792 (1987)), *aff'd per curiam*, 357 N.C. 46, 577 S.E.2d 620 (2003).

Here, neither party asserts any issue of material fact exists based on the pleadings considered by the Business Court. Rather, defendant argues whether the Business Court properly concluded as a matter of law: (1) plaintiffs lack standing to assert claims under the NC UDTPA and common law fraud; and (2) the economic loss doctrine bars plaintiffs' claims. *See Creek Pointe Homeowner's Ass'n v. Happ*, 146 N.C. App. 159, 164, 552 S.E.2d 220, 224-25 (2001) (whether a complainant has standing is a question of law), *disc. rev. denied*, 356 N.C. 161, 568 S.E.2d 191 (2002).

[2] Our review of the Business Court's order is *de novo. Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001); *Falk Integrated Tech., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the [court]." *In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (citing *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002)).

## V. Standing

[3] "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Street v. Smart Corp.*, 157 N.C. App.

303, 305, 578 S.E.2d 695, 698 (2003) (internal quotation omitted). "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *American Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 626, 574 S.E.2d 55, 57 (2002) (citations omitted), *disc. rev. denied*, 357 N.C. 61, 579 S.E.2d 283 (2003). It requires " 'that the plaintiff have been injured or threatened by injury or have a statutory right to institute an action.' " *Bruggeman v. Meditrust Co., L.L.C.*, 165 N.C. App. 790, 795, 600 S.E.2d 507, 511 (2004) (quoting *In re Baby Boy Scearce*, 81 N.C. App. 531, 541, 345 S.E.2d 404, 410, *disc. rev. denied*, 318 N.C. 415, 349 S.E.2d 589 (1986)). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commer. Courier Express, Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (citations omitted), *disc. rev. denied*, 359 N.C. 632, 613 S.E.2d 688 (2005). "The 'irreducible constitutional minimum' of standing contains three elements: (1) 'injury in fact' . . . ; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114, 574 S.E.2d 48, 52 (2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 364 (1992)), *disc. rev. denied*, 356 N.C. 675, 577 S.E.2d 628 (2003); *Beachcomber Props., L.L.C. v. Station One, Inc.*, 169 N.C. App. 820, 823, 611 S.E.2d 191, 193 (2005). Whether standing exists most often turns on whether the party has alleged an "injury in fact" in light of the applicable statutes or case law. *Neuse River Found., Inc.,* 155 N.C. App. at 114, 574 S.E.2d at 52 (citations omitted). As the party invoking jurisdiction, plaintiffs have the burden of proving the elements of standing. *Id.*

## A. Injury in Fact

An injury in fact is required for both standing and to support claims under the NC UDTPA and fraud. An injury in fact is " 'an invasion of a legally protected interest that is (a) concrete and particularized and (b) *actual or imminent*, not conjectural or hypothetical . . . .' " *Id.* (quoting *Lujan*, 504 U.S. at 560-61, 119 L. Ed. 2d at 364) (emphasis supplied). To be imminent, an injury must "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564, n.2. The injury in fact must be "distinct and palpable—and conversely that it not be abstract or conjectural or

hypothetical." *In re Ezzell*, 113 N.C. App. 388, 392, 438 S.E.2d 482, 484 (1994) (internal citations and quotations omitted).

## B. Scope of Review

Plaintiffs argue three theories as evidence that they have suffered "injuries in fact." First, they contend their loss is the future "cost of installing the brake shift interlock in Chrysler minivans and/or the difference in value between minivans with the brake shift interlock device and those without it." Second, plaintiffs assert they are at "a heightened risk of injury" due to their minivans not including a BSI. Third, they assert their "injury in fact" occurred upon their purchase of the vehicles.

Under our review of the Business Court's order dismissing plaintiffs' amended complaint, we consider the same allegations and arguments present at the trial level and properly presented here. *Anderson v. Assimos*, 356 N.C. 415, 417, 572 S.E.2d 101, 102 (2002) (the pleadings have a binding effect as to the underlying theories of the case); *Parrish v. Bryant*, 237 N.C. 256, 259, 74 S.E.2d 726, 728 (1953) ("The theory upon which a case is tried in the lower court must prevail in considering the appeal and interpreting the record and determining the validity of the exceptions."); *see also Davis*, 165 N.C. App. at 104, 598 S.E.2d at 240 (under a Rule 12(c) judgment on the pleadings, the trial court considers *only* the pleadings before it).

Plaintiffs' amended complaint fails to allege their last two arguments on appeal: (1) "heightened risk of injury;" and (2) any injury in fact upon purchase of their vehicles. *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982) ("The theory upon which a case is tried in the lower court must control in construing the record and determining the validity of the exceptions.")

Our review of plaintiffs' assertion of an injury in fact is limited to their sole argument in the amended complaint and before the Business Court, "the cost of installing the brake shift interlock in Chrysler minivans and/or the difference in value between minivans with the brake shift interlock device and those without it." Plaintiffs cannot assert a new and different theory here. *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) ("An examination of the record discloses that the cause was not tried upon that theory, and the law does not permit parties to swap horses between courts in order to get a better mount [on appeal]."); *see also State v. Sharpe*, 344 N.C. 190, 195, 473 S.E.2d 3, 6 (1996) ("[I]t is well settled in this juris-

diction that [a party] cannot argue for the first time on appeal [a] new ground . . . that he did not present to the trial court."), *cert. denied,* 350 N.C. 848, 539 S.E.2d 647 (1999); *see also Anderson,* 356 N.C. at 417, 572 S.E.2d at 102 (the pleadings have a binding effect as to the underlying theories of the case).

## C. Plaintiffs' Alleged Injuries in Fact

Plaintiffs argue they have suffered injuries in fact due to the future "cost of installing the brake shift interlock in Chrysler minivans and/or the difference in value between minivans with the brake shift interlock device and those without it." Plaintiffs rely heavily on *Coley v. Champion Home Builders Co.* as authority to support their allegation that they have suffered an injury-in-fact. 162 N.C. App. 163, 590 S.E.2d 20, *disc. rev. denied,* 358 N.C. 542, 599 S.E.2d 41 (2004).

In *Coley,* the plaintiffs purchased a mobile home from the defendant, a mobile home manufacturer. 162 N.C. App. at 165, 590 S.E.2d at 21. The United States Department of Housing and Urban Development required "all mobile home manufacturers to designate in their consumer manual at least one method to support and anchor their mobile homes." *Id.* at 164-65, 590 S.E.2d at 21. The defendant set forth in its consumer manuals and instructed "retailers of its mobile homes to inform purchasers that the homes are safe and secure when installed with the soil anchor tie-down system . . . ." *Id.* at 165, 590 S.E.2d at 21. The defendant made these recommendations and instructions despite knowing "the soil anchor tie-down system [was] defectively designed and [did not] safely secure a mobile home in high winds." *Id.*

The plaintiffs in *Coley* brought suit against the defendant for unfair and deceptive trade practices under Chapter 75 of the North Carolina General Statutes, deriving from the misrepresentation. *Id.* at 164, 590 S.E.2d at 21. They argued the defendant should pay "the costs [the plaintiffs] . . . incurred to purchase and install the defective soil anchor/tie-down system or . . . the costs [to] retro-fit their tie-down system to one that provides a safe and reliable method to secure the homes . . . ." *Id.* at 166, 590 S.E.2d at 22. The trial court granted the defendant's motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), due to the plaintiffs not making a "sufficient allegation of actual injury . . . ." *Id.* at 165-66, 590 S.E.2d at 22.

On appeal, this Court determined:

> The soil anchor tie-down system specified for use with their mobile homes is "defective and unreasonably dangerous in that it does not meet the minimum resistance standards set forth by federal and state regulations." As a result of this defect, plaintiffs are exposed to the risk of personal injury and property damage during high winds. This risk is exacerbated by the fact that Champion has led plaintiffs to believe that their homes are safe and secure when the soil anchor tie-down system is in use. Plaintiffs have been damaged by purchasing a system that does not meet HUD standards, and they will incur expenses to procure a replacement system to properly secure their homes.

*Id.* at 165, 590 S.E.2d at 21-22. "When viewed in the light most favorable to [the] plaintiffs," this Court determined the complaint set forth "a sufficient allegation of actual injury to state a claim . . . ." *Id.* at 167, 590 S.E.2d at 22.

*Coley* is readily distinguishable from the facts at bar. First, federal safety regulations do not require use of BSIs in vehicles for the years at issue. Second, defendant never specifically claimed nor warranted that its minivans were equipped with BSIs. Third, plaintiffs present no allegations or argument that defendant's vehicles are defective without BSIs. Fourth, plaintiffs admit they did not request, contract for, or even know about BSIs when purchasing their vehicles. Fifth, plaintiffs received exactly what they contracted for, a minivan without a BSI. Sixth, none of plaintiffs ever purchased a BSI or sold their vehicle at a diminished value. Based on these distinguishing factors, *Coley* does not compel reversal of the Business Court's order under Rule 12(c).

Plaintiffs cite as persuasive authority *Angelino v. DaimlerChrysler Corp.*, Case No. GIC 785729 (Ca. Super. Ct., Dec. 11, 2002), *Bell v. DaimlerChrysler Corp.*, Case No. CV003457 (Ten. Cir. Ct., June 4, 2002), and *Solarz v. DaimlerChrysler Corp.*, Case No. 2033 (Penn. CCP, Mar. 13, 2002). All three cases are factually similar and involve the same alleged injury issue. *See Trust Co. v. R.R.*, 209 N.C. 304, 308, 183 S.E. 620, 622 (1935) (although we are not bound by decisions from other jurisdictions, we may find their analysis and conclusions persuasive in deciding the issue).

In *Angelino*, the plaintiffs filed a complaint against the defendant alleging unlawful business practices, unfair and fraudulent business

practices, and fraud for the lack of BSIs. On the defendant's motion for summary judgment, the California Superior Court dismissed the plaintiffs' claims of fraud and unlawful business practices for lack of actual loss or injury. The court allowed the claim for unfair and fraudulent business practices because California's statute did not require plaintiffs' showing actual loss or injury in fact to sustain their claim.

In *Bell*, the matter before the Tennessee Circuit Court was the plaintiffs' requested class certification. The plaintiffs in *Bell* filed a complaint against the defendant for fraud, misrepresentation, and violations of the Tennessee Consumer Protection Act due to the lack of BSIs in the defendant's vehicles. The court briefly considered the issue of whether the plaintiffs suffered a legally cognizable issue. The *Bell* court concluded the plaintiffs "stated a sufficient a [sic] 'legally cognizable injury' to satisfy class certification." The court cited *Vance v. Schulder*, 547 S.W.2d 927 (Tenn. 1977) as authority that loss in value is a legal injury. Our review of *Vance* shows the plaintiff in that case actually suffered monetary damages due to the defendants' fraud and misrepresentations prior to filing his complaint. Like the plaintiffs in *Bell*, plaintiffs here had not realized any monetary loss and solely alleged a potential *future* injury.

In *Solarz*, the plaintiffs filed a complaint against the defendant for breach of implied warranties, breach of express warranty, breach of contract, breach of duty of good faith and fair dealing, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Act ("UTPCPA"). The complaint alleged one of the plaintiffs' daughter knocked the gear selector from "park" into "drive" on a minivan manufactured by defendant, causing it to roll down the street. The *Solarz* plaintiffs requested the defendant install a BSI pursuant to warranties received with the minivan. The defendant refused. The class included other owners of similar minivans who alleged future injuries of diminution of value and installation costs. On review of the defendant's "preliminary objections" to the plaintiffs' complaint, the court determined each plaintiff alleged sufficient "ascertainable losses" to satisfy the UTPCPA. However, the court noted a UTPCPA claim "does not fail as a matter of law even where damages are not easily quantified or where a claim has failed to quantify the damages suffered." The court also dismissed the plaintiffs' remaining claims that alleged solely future injuries of diminution of value and installation costs for lack of any actual injury or damages.

*Angelino, Bell*, and *Solarz* are each distinguishable from the facts at bar due to differing facts and the underlying case law and statutes.

The *Angelino* court allowed the claim for unfair and state fraudulent business practices because California's statute did not require a showing of actual loss or injury in fact. Case No. GIC 785729 (Ca. Super. Ct., Dec. 11, 2002). We are not persuaded the legal precedent in *Vance* the *Bell* court cites to find a "legally cognizable injury" supports that determination and *Bell* is not controlling here. Case No. CV003457 (Ten. Cir. Ct., June 4, 2002). In addition, the issue in *Bell* arose during a class certification hearing, not during a hearing for judgment on the pleadings.

Finally, the *Solarz* court concluded future expenses caused by a lack of a BSI were an "ascertainable loss." However, the court acknowledged Pennsylvania's UTPCPA did not require quantifiable damages and it also dismissed plaintiffs' remaining claims for lack of damages. These courts considered the injury in fact issue from the perspective of satisfying the elements of the claims asserted and not standing. Here, the injury in fact alleged is the same for both standing and the claims plaintiffs asserted. *Neuse River Found., Inc.*, 155 N.C. App. at 114, 574 S.E.2d at 51-52 (standing); N.C. Gen. Stat. § 75-1.1 (2003) (unfair and deceptive trade practices); *Davis v. Sellers*, 115 N.C. App. 1, 10, 443 S.E.2d 879, 884 (1994) (common law fraud), *disc. rev. denied*, 339 N.C. 610, 454 S.E.2d 248 (1995).

After reviewing plaintiffs' arguments, numerous citations to authority, and their pleadings in a light most favorable to them under Rule 12(c), plaintiffs have not alleged a legally sufficient injury in fact to survive defendant's motion for judgment on the pleadings. *Mabrey*, 144 N.C. App. at 124-25, 548 S.E.2d at 187-88. Plaintiffs' amended complaint demanded

> damages in an amount sufficient to repair and/or install brake shift interlock [sic] on each vehicle, Chrysler to install the brake shift interlock in the minivans of the Plaintiffs and Class members, and to provide appropriate notice to all Class members of the dangers in the minivans in the absence of the brake shift interlock.

Plaintiffs did not allege in their amended complaint, before the business court, or here "an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical . . . ." *Neuse River Found., Inc.*, 155 N.C. App. at 114, 574 S.E.2d at 52. Plaintiffs do not assert or allege they incurred expenses or were damaged by: (1) installing a BSI on their vehicles; or (2) selling their vehicles and realizing a loss due to the absence of

BSIs. In addition, plaintiffs specifically disclaimed and the amended complaint contains no allegations of personal injuries or damage to personal property by plaintiffs.

The sole remedy plaintiffs seek is for possible *future* expenses not yet incurred. Plaintiffs' "damages" are a hypothetical and an unsubstantiated diminution of value allegedly caused by a purported "defect" and the cost of "supposed" remedial measures. Plaintiffs admit none of these alleged "damages" are realized. Plaintiffs have not suffered a "concrete and particularized" injury in fact that is "actual or imminent." *Id.* Their claims are too speculative and illusory to show a legal injury in fact. *In re Ezzell*, 113 N.C. App. at 392-93, 438 S.E.2d at 484-85.

Our holding is consistent with the great majority of other jurisdictions which have considered identical claims. *Ziegelmann v. DaimlerChrysler Corp.*, 649 N.W.2d 556, 565 (N.D. 2002) (trial court did not err in dismissing complaint for failure to plead a legally cognizable injury); *Bowers v. DaimlerChrysler Corp.*, No. 01 CV 877 (Colo. Dist. Ct., Dec. 23, 2002) (dismissing case because the plaintiff did "not make any allegation that he sold his vehicle at a reduced value, or incurred costs to 'fix' the problem"); *Ingram v. DaimlerChrysler Corp.*, No. 01-3684 (Fla. Cir. Ct., May 7, 2002) (dismissing case because the plaintiff failed to "allege compensable losses, injuries, or damages"); *Cox v. DaimlerChrysler Corp.*, No. LACV080519 (Iowa Dist. Ct., June 5, 2002) (dismissing claims because plaintiff failed to allege any legally cognizable damages); *Seim v. DaimlerChrysler Corp.*, No. CI01-384 (Neb. Dist. Ct., July 22, 2002) (granting summary judgment in favor of the defendant and denying class certification because the plaintiffs failed to allege damages); *Marsh v. DaimlerChrysler Corp.*, Docket No. MON-L-892-01 (N.J. Super. Ct., May 6, 2003) (dismissing case because the plaintiffs failed to allege any tort injury or ascertainable loss); *Oltmans v. DaimlerChrysler Corp.*, CV-2001-03236 (N.M. Dist. Ct., July 24, 2003) (dismissing case for failure to allege legally cognizable damages); *BP Painting, Inc., et al. v. DaimlerChrysler Corp.*, CIV. 01-350 (S.D. Jud. Ct., Yankton County, Mar. 27, 2003) (the plaintiffs' "claim . . . that their vehicle might malfunction and cause injury in the future . . . is too speculative to constitute a legally cognizable tort injury"). These great majority of cases represent the better reasoned approach and are consistent with North Carolina's requirement of injury in fact. *Neuse River Found., Inc.*, 155 N.C. App. at 114, 574 S.E.2d at 52.

## VI. Arguments Raised by Dissenting Opinion

Contrary to the dissenting opinion's assertions otherwise, we have addressed all issues properly before us on appeal and applicable to the issue at hand: whether plaintiffs have standing to assert their claims of unfair and deceptive trade practices and fraud. Plaintiffs did not argue statutory standing for their claim of unfair and deceptive trade practices either before the Business Court or this Court. None of the arguments presented by the dissenting opinion concerning N.C. Gen. Stat. § 75-1.1 as a "creature of statute" were asserted by plaintiffs. It is not the role of this Court to fabricate and construct arguments not presented by the parties before it. *In re Appeal of Mount Shepherd Methodist Camp*, 120 N.C. App. 388, 390, 462 S.E.2d 229, 231 (1995) (Appellate review is "limited to the . . . arguments presented in the briefs to this Court."); *Crockett v. Savings & Loan Assoc.*, 289 N.C. 620, 632, 224 S.E.2d 580, 588 (1976) ("[A]ppellate review is limited to the arguments upon which the parties rely in their briefs."); N.C.R. App. P. 28(a) (2004) ("Review is limited to questions so presented in the several briefs").

The dissenting opinion further addresses the Business Court's consideration of the economic loss doctrine. We specifically decline to address this issue in light of our holding that plaintiffs lack standing to assert either fraud or unfair and deceptive trade practices claims.

## VII. Conclusion

Plaintiffs bear the burden of proving the elements of standing. *Neuse River Found., Inc.*, 155 N.C. App. 113, 574 S.E.2d at 51 (citation omitted). Plaintiffs fail to show they have been "injured or threatened by injury or have a statutory right to institute an action." *Bruggeman*, 165 N.C. App. at 795, 600 S.E.2d at 511 (quotation omitted). Plaintiffs failed to assert a present injury in fact and do not meet the "irreducible constitutional minimum" of standing to assert causes of action. *Neuse River Found., Inc.*, 155 N.C. App. at 114, 574 S.E.2d at 52 (quotation omitted). Without standing, "a court has no subject matter jurisdiction to hear the claim." *Estate of Apple*, 168 N.C. App. at 177, 607 S.E.2d at 16 (citations omitted).

The Business Court properly determined defendant was entitled to judgment as a matter of law under Rule 12(c). *Affordable Care, Inc.*, 153 N.C. App. at 532, 571 S.E.2d at 57; N.C. Gen. Stat. § 1A-1, Rule 12(c). In light of our holding, it is unnecessary to consider the

COKER v. DAIMLERCHRYSLER CORP.

[172 N.C. App. 386 (2005)]

other issues addressed by the Business Court and the parties. The Business Court's order is affirmed.

Affirmed.

Judge ELMORE concurs.

Judge HUDSON dissents.

HUDSON, J., dissenting.

Plaintiffs here appeal the trial court's order granting defendant's motions to dismiss their claims for violations of Chapter 75, the Unfair and Deceptive Trade Practices Act (UDTPA), and for common law fraud. Because I conclude that the majority (1) has not addressed the issues presented by the appellants, (2) has misapplied principles of common law standing instead of addressing whether the pleadings sufficiently allege their statutory claims, and (3) has filed to follow applicable precedent in disposing of both claims, I respectfully dissent.

In their Amended Complaint, plaintiffs have set forth numerous factual allegations, culminating in two substantive claims for relief for the class they seek to represent. Count I seeks relief in the form of damages and/or injunctive relief for violations of Chapter 75, the UDTPA. Among the allegations under this claim are the following:

76. Chrysler's wrongful conduct resulted in an ascertainable loss to Plaintiffs and Class members. The ascertainable loss includes the cost of installing the brake shift interlock in Chrysler minivans and/or the difference in value between minivans with the brake shift interlock device and those without it.

Count II seeks damages for "Common Law Fraud."

The briefs to this Court, the order, and the transcript all refer to defendant's motion for judgment on the pleadings and accompanying memoranda to the trial court, but no such motion appears in the record on appeal. The only pleading which includes any such motions is the Answer, which lists some twenty-four defenses, only a few of which appear to relate to any of the issues before us. They are:

FIRST DEFENSE

Plaintiffs have failed to state a claim upon which relief may be granted . . .

FIFTEENTH DEFENSE

> Plaintiff's tort claims and those of the putative class members are barred by the economic loss doctrine . . .

NINETEENTH DEFENSE

> Plaintiff's have not complied and cannot comply, with all pre-requisites for maintaining a claim under the N.C. Gen. Stat. 75-1.1, et seq . . .

TWENTY-THIRD DEFENSE

> Some or all of the claims of plaintiffs and members of the putative class may be preempted by federal law and regulation.

In the prayer for relief, defendant seeks a "judgment in its favor dismissing Plaintiff's . . . Complaint." The first specific mention of standing appears in the oral arguments before the trial court.

First, I do not agree with the majority's statement of the standard of review and the issues. It is well established that upon review of a dismissal on the pleadings, this Court is to review the pleadings (here, the complaint and answer) in the light most favorable to the plaintiff, to determine whether plaintiffs have alleged any legal theory under which they could prevail. "In ruling on a motion to dismiss under Rule 12(b)(6), a court must determine whether, taking all allegations in the complaint as true, relief may be granted under *any* recognized legal theory." *Coley v. Champion Home Builders Co., et al.*, 162 N.C. App. 163, 166, 590 S.E.2d 20, 22, *disc. review denied*, 358 N.C. 542, 599 S.E.2d 41 (2004) (emphasis in original).

Instead of conducting this review, the majority, citing *Parrish v. Bryant*, asserts that because part of plaintiffs' argument differs from the theory "upon which [the] case was tried" in the trial court, those matters are not properly before us. 237 N.C. 256, 259, 74 S.E.2d 726, 728 (1953). Since the case has not been tried at all, I believe that this analysis is misplaced. Rather, as to each of plaintiffs' claims, our task is to determine whether plaintiffs have set forth a legal theory under which they could prevail. As the plaintiffs' two claims require separate analysis, they are discussed in turn.

First, plaintiffs have set forth a statutory claim under Chapter 75, alleging that defendants have engaged in unfair and deceptive acts and practices in or affecting commerce. The majority uphold the dismissal of this claim, applying common law principles of standing.

However, since this is a statutory claim, I conclude that such analysis is inappropriate, and the proper analysis requires determining whether plaintiffs have alleged a basis for the claim as created by the statute. Essentially, plaintiffs contend that the defendants advertised their minivans as the safest in the world, when they knew that they were not, and that plaintiffs purchased the van based on these representations, resulting in damages. The pertinent statutory provisions of the UDTPA are:

(a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

(b) For purposes of this section, 'commerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.

(c) Nothing in this section shall apply to acts done by the publisher, owner, agent, or employee of a newspaper, periodical or radio or television station, or other advertising medium in the publication or dissemination of an advertisement, when the owner, agent or employee did not have knowledge of the false, misleading or deceptive character of the advertisement and when the newspaper, periodical or radio or television station, or other advertising medium did not have a direct financial interest in the sale or distribution of the advertised product or service.

(d) Any party claiming to be exempt from the provisions of this section shall have the burden of proof with respect to such claim.

N.C. Gen. Stat. § 75-1.1 (2001). In addition, treble damages are authorized under this chapter:

If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

N.C. Gen. Stat. § 75-16 (2001). Standing to bring a claim under this chapter has been conferred by the legislature, and the nature of

such claims has been further clarified by decisions interpreting these sections.

> An action for unfair or deceptive acts or practices is 'the creation of . . . statute. It is, therefore, sui generis.' . . .

> In discussing the purpose of the statute, our Supreme Court has stated: Such legislation was needed because common law remedies had proved often in effective . . . .

*Bernard v. Central Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 230, 314 S.E.2d 582, 584, *disc. review denied*, 311 N.C. 751, 321 S.E.2d 126 (1984) (internal citations omitted).

Most recently in *Coley*, this Court explained Chapter 75 claims as follows:

> Unfair or deceptive acts or practices in or affecting commerce are unlawful in North Carolina. N.C. Gen. Stat. 75-1.1 (2003). To prevail on a claim for unfair and deceptive trade practices, plaintiffs must show: (1) an unfair or deceptive act or practice; (2) in or affecting commerce; (3) which proximately caused actual injury to plaintiffs. *Canady v. Mann*, 107 N.C. 252, 260, 419 S.E.2d 597, 602 (1997). Thus, to recover damages, plaintiffs must prove they suffered actual injury as a result of defendant's unfair and deceptive act. *See Mayton v. Hiatt's Used Cars, Inc.*, 45 N.C. 206, 212, 262 S.E.2d 860, 864, *disc. rev. denied*, 300 N.C. 198, 269 S.E.2d 624 (1980).

> Actual injury may include the loss of the use of specific and unique property, the loss of any appreciated value of the property, and such other elements of damages as may be shown by the evidence. *Poor v. Hill*, 138 N.C. App. 19, 34, 530 S.E.2d 838, 848 (2000).

*Coley*, 162 N.C. App. at 166, 590 S.E.2d at 22. In *Coley*, as here, the issue on appeal was whether the plaintiffs had sufficiently alleged damages to survive a motion to dismiss. The plaintiffs alleged that they had purchased mobile homes which lacked a required safety feature. Plaintiffs alleged that they were damaged

> by purchasing a system that does not meet HUD standards, and they will incur expenses to procure a replacement system to properly secure their homes.

The sole issue argued by the parties to this appeal is whether plaintiffs have made a sufficient allegation of actual injury to survive a motion to dismiss for failure to state a claim . . . .

*Id* at 165, 590 S.E.2d at 22. This Court then held that the plaintiffs' allegations of costs that they had incurred or would incur to repair the defect were "sufficient allegation[s] of actual injury to state a claim for unfair and deceptive trade practices." *Id* at 167, 590 S.E.2d at 22.

Because I see no meaningful distinction between *Coley* and the case before us, I conclude that we are bound to follow *Coley* and reverse the order of dismissal as to Count I of plaintiffs' complaint. None of the purported distinctions listed by the majority relate to the issue before us, which is whether the complaint sufficiently alleged injury to proceed as an unfair and deceptive trade practice claim. Indeed, the majority at no point actually addresses this issue. In addition, the majority rejects the plaintiffs' allegations for future expenses as "hypothetical," "speculative" and not yet realized. Because the types of damages alleged are virtually identical to those deemed sufficient in *Coley*, I do not believe we have the authority to hold otherwise. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989). Thus, I cannot agree with the analysis.

Plaintiffs also cite several unpublished opinions from other states, involving identical claims and the very same defendants, brought under the unfair and deceptive trade practices statutes of California, Tennessee and Pennsylvania. *Angelino v. Daimler-Chrysler Corp.*, No. GIC 785729 (Cal. Sup. Ct., San Diego County (11 December 2002)); *Bell v. DaimlerChrysler Corp.*, No. CV003457 (Tenn. Cir. Ct., Cumberland County (4 June 2002)); *Solarz v. DaimlerChrysler Corp.*, No. 2033 (Penn. CCP (13 March 2002)). Although we are not bound by these decisions, they add further support for my conclusion that the allegations here are sufficient to withstand dismissal. Indeed, the allegations of actual injury in *Solarz* are identical to those here, and the court there held that the plaintiffs had sufficiently alleged damages for their claims of violations of the relevant unfair and deceptive trade practices statute.

In addition, although the majority contends that plaintiffs did not argue statutory standing for their claims of unfair and deceptive trade practices either before the business court or this Court, the record reflects otherwise. The first specific mention of standing in this record is in the oral argument before the business court. "A challenge

to standing is an affirmative defense. . . ." 61A Am Jur 2d PLEADING § 316 (2004); *see also Woolard v. Davenport*, 166 N.C. App. 129, 133, 601 S.E.2d 319, 322 (2004); *Merrick v. Peterson*, 143 N.C. App. 656, 658, 548 S.E.2d 171, 173 (2001). The first opportunity for plaintiff to address this issue after alleging their causes of action in the complaint, came after the defendants raised the defense. Assuming arguendo that the defendant has adequately raised this defense, plaintiffs responded. The transcript of the argument shows defense counsel stated the following:

> And in the absence of any other actual injury . . . there is no— there is simply no standing.

> There was some discussion in the plaintiffs' opposition brief about the standing cases that we relied on being factually inapposite, but—and they are to some extent factually different scenarios. . . .

Thus, it is apparent that plaintiffs did respond when necessary to the allegations of lack of standing, both in the opposition brief and in the oral argument to the business court, and again in their brief to this Court. Here, the first two sections of argument in plaintiffs' brief on appeal address the issue of their standing to pursue their statutory claims under Chapter 75. The issue was appropriately raised and argued both in the business court and here.

To the extent that the majority treats the issue of the sufficiency of the pleadings to state a statutory Chapter 75 claim as an issue of standing to pursue a tort claim, I conclude that the discussion is misplaced. A claim under Chapter 75 is not a tort claim, but is a creature of the legislature, with a distinct purpose. That purpose has been described as follows:

> We think it was the clear intention of the 1969 General Assembly in enacting Ch. 833, among other things, to declare deceptive acts or practices in the conduct of any trade or commerce in North Carolina unlawful, to provide civil means to maintain ethical standards of dealing between persons engaged in business and the consuming public within this State, and to enable a person injured by deceptive acts or practices to recover treble damages from a wrongdoer.

*Hardy v. Toler*, 24 N.C. App. 625, 630-31, 211 S.E.2d 809, 813, *modified*, 288 N.C. 303, 218 S.E.2d 342 (1975). Because I conclude that plaintiffs sufficiently allege a claim for violations of this statute and

COKER v. DAIMLERCHRYSLER CORP.

[172 N.C. App. 386 (2005)]

for damages, consistent with these precedents and with the purpose of Chapter 75, I would reverse the dismissal of this claim.

Turning to plaintiffs' claim for fraud, Count II in the complaint, I dissent on this issue as well. The majority opinion does not address the determinative issue on this count, which is whether the complaint alleges common law fraud sufficiently to survive a motion to dismiss under Rule 12(c). The plaintiffs argue on appeal that the business court erred by dismissing their fraud claims. They maintain that the "economic loss doctrine" has never been applied to common law fraud claims in North Carolina and should not be extended to do so here. Although the majority does not address this issue, I would reverse the dismissal of plaintiffs' fraud claim on the pleadings, and would specifically hold that the economic loss doctrine does not apply to claims for common law fraud.

As defendant points out, "North Carolina has adopted the economic loss rule, which prohibits recovery for economic loss" in some kinds of tort actions. *Moore v. Coachman Industries*, 129 N.C. App. 389, 401, 499 S.E.2d 772, 780 (1998). This Court in *Moore* applied the doctrine to the negligence claims brought against a manufacturer, which plaintiffs here have not claimed. *Id.* at 402, 499 S.E.2d at 780. The defendant here concedes that the North Carolina appellate courts have not applied the economic loss rule to claims based on fraud or Chapter 75. I do not believe that we should extend the doctrine, as such a holding is not justified by precedent, nor by logic or sound policy.

In *Moore*, for example, the Court applied the doctrine to bar the claim for negligence which resulted in no personal injury. However, our courts have often allowed fraud claims in which the damage was economic. *See Chicopee, Inc. v. Sims Metal Works, Inc.*, 98 N.C. App. 423, 391 S.E.2d 211, *disc. review denied*, 327 N.C. 426, 395 S.E.2d 674 (1990) (adopting the doctrine and applying it to claims for negligence); *Wilson v. Dryvit Systems, Inc.*, 206 F. Supp.2d 749 (E.D.N.C. 2003) (declining to apply the doctrine to claims for fraud); *Canady v. Mann*, 107 N.C. App. 252, 419 S.E.2d 597 (1992) (holding that the economic losses were recoverable when plaintiff was fraudulently induced to purchase a worthless piece of land). In *Wilson*, the Court was given the opportunity to apply the rule to claims for fraud and unfair and deceptive trade practices, but declined to do so. In fact, the only ruling that we can locate which applies the economic loss doctrine to bar a claim for fraud is the decision of the business court below.

Aside from the lack of precedent to justify such a ruling, I conclude that the majority decision is contrary to sound reasoning and to the policy considerations that underlie fraud and the economic loss doctrine, as well as Chapter 75. In claims for negligence, where the doctrine has been applied, the wrong for which plaintiffs seek redress is the breach of a duty of reasonable care in design and traditionally the harm is either personal injury or property damage. In claims for fraud on the other hand, the wrong addressed is the alleged misrepresentation by a defendant, relied upon by the plaintiff and typically resulting in an expenditure of money. Thus, the loss involved in a fraud claim is very often economic. .

> Under the [economic loss] rule, a plaintiff who can claim only economic damages without being able to show any personal or property damage will not be allowed to bring a tort action for the loss, and must look to contract, warranty, and statutory actions instead. Courts use the rule to separate contract law, 'which is designed to enforce the expectancy interests of the parties,' from tort law" which is designed to keep persons from 'causing physical harm' to others.

National Consumer Law Center, *Unfair and Deceptive Trade Practices Manual,* S. 4.2.16.2. (6th Edition 2004) (quoting *Casa Clara Condo Ass'n v. Charley Toppino & Sons, Inc.,* 620 So.2d 1244, 1246 (Fla. 1993)).

> Most courts will not apply the economic loss rule to bar claims that the defendant fraudulently induced the transaction. These courts reason that the purpose of the rule, to limit parties to contract remedies, is not promoted when fraud has undermined the consumer's ability to freely negotiate the terms and remedies of the contract.

*Id.* I would apply the same reasoning here and hold that the economic loss rule does not bar plaintiffs' claims for fraud.

Further, to the extent that the ruling below implicitly applies the economic loss doctrine to the Chapter 75 claim, I would specifically reject that application as well.

> The rule has generally been used to bar only tort claims; most courts have held that the economic loss rule does not apply to UDAP [UDTPA] claims. UDAP claims are exempt from the economic loss rule because the rule is judicial, not legislative, and must give way to specific legislative policy pronouncement allow-

ing damages for economic loss. In other words, by enacting a remedy for economic losses suffered by reason of an act deemed wrongful by the statute, the legislature has effectively preempted the economic loss rule for those cases covered by the act. *To apply the economic loss rule to UDAP claims would effectively eviscerate the statute. The legislature could hardly have intended that the rule would bar the very claims the UDAP statute created.*

*Id.* (emphasis added). Since, in North Carolina, unfair and deceptive trade practices claims include, but are not limited to, claims involving fraud, this reasoning applies to the fraud claim as well. *See Holley v. Coggin Pontiac,* 43 N.C. App. 229, 241, 259 S.E.2d 1, 9, *disc. rev. denied,* 298 N.C. 806, 261 S.E.2d 919 (1979).

In sum, I would reverse the dismissal on the pleadings of both claims and remand for further proceedings.