Estate of Schwarz v. Schwarz, 2016 NCBC 106.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 3524

THE ESTATE OF GEOFFREY H.
SCHWARZ, by and through
ALEXANDER TODD SCHWARZ, as
personal representative,

Plaintiff,

v.

JOHN R. SCHWARZ,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER & OPINION ON DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS

1. THIS MATTER is before the Court on Defendant's Motion for Judgment on the Pleadings ("Motion"), brought under Rule 12(c) of the North Carolina Rules of Civil Procedure. For the reasons discussed below, the Motion is DENIED.

*Smith Moore Leatherwood LLP, by Richard A. Coughlin and W. Craig Turner, for Plaintiff.*

*Rossabi Reardon Klein Spivey PLLC, by Amiel J. Rossabi and Elizabeth M. Klein, for Defendant.*

Gale, Chief Judge.

## I. INTRODUCTION

2. Plaintiff is the Estate of Geoffrey H. Schwarz (the "Jeff Schwarz Estate"), by and through Alexander Todd Schwarz ("Todd"), who is both the personal representative of the Jeff Schwarz Estate and the son of Geoffrey H. Schwarz ("Jeff"). Before Jeff died in November 2015, he operated two limited-

liability companies with his brother, Defendant John R. Schwarz ("John")—John & Jeff Schwarz, LLC ("J&J") and C.E.-Bett St. Lucie, LLC ("C.E.-Bett"). The Jeff Schwarz Estate now seeks judicial intervention to determine the validity of its membership interests in J&J and C.E.-Bett, and the value of the ownership interests in the two companies.

## II.   FACTUAL BACKGROUND

3.     The following statement of facts is made solely for purposes of ruling on the Motion.

4.     Jeff died on November 25, 2015. (Am. Compl. ¶ 1.) He and John were equal owners and the sole members and managers of J&J and C.E.-Bett. (Am. Compl. ¶¶ 6, 8.)

5.     The parties agree that J&J was formed in or around June 2005. (Am. Compl. ¶ 6; Verified Am. Answer 7.) The parties disagree as to whether C.E.-Bett was formed in 2006 or in 2011. (Am. Compl. ¶ 8; Verified Am. Answer 7.) The date of C.E.-Bett's formation is not relevant to the Motion. The relevant dates are the dates that the brothers entered into purchase and sale agreements that control the disposition of interests in the two businesses following either brother's death. The purchase and sale agreements attached as Exhibits B and C to the Amended Complaint relate to J&J, and the agreements attached as Exhibits D and E relate to C.E.-Bett. Plaintiff contends that Exhibits B and D control. Defendant contends that Exhibits C and E control.

6.      Plaintiff alleges that, on or about March 22, 2010, Jeff and John executed Exhibit B regarding J&J. (Am. Compl. ¶ 11; *see* Am. Compl. Ex. B.) John admits that he and Jeff executed Exhibit B sometime prior to March 22, 2010. (Verified Am. Answer ¶ 12.) However, he contends that Exhibit B was only a draft agreement, and that the final agreement between the brothers is attached as Exhibit C, dated March 22, 2010. (Verified Am. Answer 8; *see* Am. Compl. Ex. C.)

7.      Exhibit B provides, among other things, that upon the death of either brother, the deceased brother's estate has the option, but is not obligated, to sell to the surviving brother the deceased brother's ownership interest in J&J at fair market value, determined either by agreement or by appraisal. (Am. Compl. Ex. B ¶¶ 5, 6.) It further provides that, until a sale might be effectuated, the estate of the deceased brother would become a member of J&J and would have an equal share of net profits in J&J, while the surviving brother would continue to operate the LLC. (Am. Compl. Ex. B ¶¶ 1, 5.) The copy of Exhibit B attached to the Amended Complaint was signed by both John and Jeff but is not dated.

8.      Exhibit C provides, among other things, that upon the death of John or Jeff, the estate of the deceased brother must offer to sell the deceased brother's interest in J&J to the surviving brother for $750,000. (Am. Compl. Ex. C ¶ 5.) It further provides that the $750,000 purchase price would be modified by agreement or appraisal upon the five-year anniversary of the agreement's execution if both brothers were still living. (Am. Compl. Ex. C ¶ 8.)

9. John avers, and Plaintiff denies, that John and Jeff reached an oral agreement prior to Jeff's death that the purchase price for J&J would remain fixed at $750,000 and that no new agreement would be prepared. (Am. Countercl. ¶¶ 35–39.) Todd admits that he did not discuss the terms of the agreements for either J&J or C.E.-Bett with Jeff. (Pl.'s Reply to Def.'s Am. Countercl. ¶ 39.) However, Plaintiff also alleges that, in January 2015, prior to Jeff's death, one of Jeff's employees advised John that J&J would need to be appraised, consistent with the passing of the five-year anniversary of the agreement's execution. (Am. Compl. ¶ 23.)

10. Plaintiff claims, pursuant to Exhibit B, that the Jeff Schwarz Estate is now a member of J&J, that the estate has the option, but is not obligated, to sell Jeff's interest to Defendant, and that, in the event of a sale, the purchase price is for fair market value determined either by agreement or by appraisal. Defendant contends that, regardless of whether Exhibit B or Exhibit C controls, Plaintiff is obligated to sell Jeff's interest to John for $750,000.

11. The parties have a similar dispute regarding John's desire to purchase Jeff's interest in C.E.-Bett. Plaintiff relies on Exhibit D. Defendant relies on Exhibit E. Exhibit D, which Plaintiff contends was executed on June 30, 2011, provides the estate a right, but does not obligate it, to sell Jeff's interest in C.E.-Bett. Like the Exhibit C purchase and sale agreement for J&J, Exhibit E sets the price for C.E.-Bett at $750,000, subject to modification upon the fifth anniversary of the agreement's execution. (Am. Compl. ¶¶ 26–31.) Plaintiff contends that,

pursuant to Exhibit D, because Jeff died before the fifth anniversary of that agreement, the estate is now a member of C.E.-Bett and has the option, but is not obligated, to sell Jeff's interest for $750,000. Defendant contends that Exhibit E, which has provisions comparable to Exhibit C, controls Plaintiff's interest in C.E.-Bett, and thus, Plaintiff did not become a member of C.E.-Bett and is now obligated to sell Defendant its interest in C.E.-Bett for $750,000. (*See* Am. Compl. Ex. E ¶ 5.)

12. Plaintiff did not learn of Exhibits B and D until after Jeff's death. Plaintiff initially demanded an appraisal of J&J under the provisions of Exhibit C's requirement for a new valuation after the agreement's five-year anniversary. Defendant responded to Plaintiff's demand by contending that, prior to Jeff's death, Jeff and John had agreed that no new valuation would be prepared and that the purchase price would remain fixed at $750,000. Plaintiff thereafter learned of Exhibits B and D and now contends that those are the controlling agreements.

13. Defendant has demanded that Plaintiff convey Jeff's interest in the two companies for $750,000 each.

14. Plaintiff seeks a declaratory judgment in its favor. Through his Amended Counterclaim, Defendant seeks a declaratory judgment in his favor, as well as a decree of specific performance to compel Plaintiff to sell Jeff's interests to John.

15. In the Motion, Defendant maintains that judgment should be entered in his favor based on the pleadings because the pleadings reveal that Plaintiff neither has nor will be able to develop evidence that Exhibits B and D are

enforceable and Exhibits C and E are not enforceable, and further, because the pleadings prove that John and Jeff orally modified Exhibit C to eliminate any need for a new valuation, such that Plaintiff's obligation to sell Jeff's interest is fixed at $750,000.

## III. PROCEDURAL HISTORY

16. Plaintiff filed its Complaint and notice of designation on February 19, 2016. The Chief Justice entered an order designating the case as a mandatory complex business case on February 22, 2016, and the matter was assigned to the undersigned on February 24, 2016.

17. Plaintiff filed an Amended Complaint on March 8, 2016, seeking a declaratory judgment on multiple grounds relating to its rights in J&J and C.E.-Bett.

18. Defendant filed the Motion on June 24, 2016. The Court heard oral argument on the Motion on August 30, 2016, and the Motion is now ripe for ruling.

## IV. STANDARD OF REVIEW

19. On a motion for judgment on the pleadings, the trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 334 (2005). For purposes of a motion for judgment on the pleadings, all factual allegations in the nonmovant's pleadings are deemed admitted except those that are legally impossible or are not admissible in evidence. *Governors Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 247, 567 S.E.2d 781, 786 (2002),

*aff'd*, 357 N.C. 46, 577 S.E.2d 620 (2003). "[J]udgment on the pleadings is not appropriate merely because a claimant's case is weak and he is unlikely to prevail on the merits." *Huss v. Huss*, 31 N.C. App. 463, 469, 230 S.E.2d 159, 163 (1976). The purpose of the motion is to test the legal sufficiency of the complaint and not the facts that support it. *See Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 389, 617 S.E.2d 306, 309 (2005), *aff'd per curiam*, 360 N.C. 398, 627 S.E.2d 461 (2006).

## V.   ANALYSIS

20.    Defendant's Motion rests on two essential premises.  If either of those premises fails, the Motion must fail, and the claims must be resolved either by trial or by subsequent motion practice on a developed record.  The first premise is that Plaintiff cannot and will not be able to establish a foundation to introduce Exhibits B or D as evidence to be considered by the trier of fact, and thus, Plaintiff is bound by Exhibits C and E.  The second premise is that Plaintiff has admitted that Todd never discussed the terms of the agreements with Jeff, and thus, Plaintiff has no competent evidence to rebut John's verified statement that he and Jeff reached an oral agreement that modified Exhibit C, fixing the purchase price at $750,000 and eliminating the need for any appraisal or agreement on a modified purchase price.

### A. <u>Plaintiff Is Entitled to Discovery on the Parties' Contested Positions Regarding Exhibits B and D.</u>

21.    Unquestionably, the Amended Complaint alleges that Exhibits B and D are the agreements in force.  Defendant contends that the Court can disregard those allegations because the pleadings reveal that Plaintiff does not, and will not,

have factual support for those allegations. While the copy of Exhibit B attached to the Amended Complaint is not signed, Defendant's Amended Counterclaim acknowledges that Exhibit B was prepared by the companies' counsel. Plaintiff further alleges that there were multiple copies of Exhibit B, at least one copy of which was found among Jeff's business records after his death, and that Defendant in fact distributed copies of Exhibit B to Jeff's heirs. (Am. Compl. ¶¶ 14–15.) While the Court confines its ruling to matters disclosed by the pleadings, it notes that Plaintiff stated at oral argument that discovery will reveal other evidence that the brothers signed Exhibit B on or around March 22, 2010—the same date that Defendant contends the brothers executed Exhibit C.

22. First, as to Plaintiff's interest in J&J, the Court concludes that Plaintiff has adequately pleaded that the brothers executed Exhibit B on or around March 22, 2010, that Plaintiff is entitled to discovery in an effort to support those allegations, and that the dispute between the parties should not be resolved solely on the pleadings.

23. Defendant further contends that other uncontested evidence proves that Exhibit C was the controlling agreement. For example, Defendant points to Plaintiff having alleged that Jeff's employee wrote an e-mail referring to an appraisal term found in Exhibit C but not in Exhibit B. The Court concludes that when making this allegation, Plaintiff did not admit, and is not bound to, a position that Exhibit C is the controlling agreement.

24. As to Plaintiff's interest in C.E.-Bett, the Court concludes that there are factual disputes that should not be resolved on the pleadings alone. Defendant contends that Plaintiff cannot rely on Exhibit D, noting Plaintiff's own allegations that the companies' counsel never prepared Exhibit D and that John never signed Exhibit D. (Am. Countercl. ¶ 22.) However, the copy of Exhibit D attached to the Amended Complaint was fully executed by the parties and is dated June 30, 2011. (*See* Am. Compl. Ex. D.) There is a contested issue arising from sufficient allegations adequate to survive a motion brought under Rule 12(c).

B. **Plaintiff's Admission that Todd and Jeff Never Discussed the Terms of the Agreements Does Not Necessarily Foreclose Plaintiff's Ability to Contest John's Verified Statement that He and Jeff Reached an Oral Agreement that the $750,000 Purchase Price Would Not be Modified.**

25. John contends that Plaintiff cannot rebut, and therefore must be bound by, John's verified statement that, prior to Jeff's death, John and Jeff reached an oral agreement to leave the purchase price for J&J fixed at $750,000 and to not execute any written modification because the purchase price would not be changed. John relies on Plaintiff's admission that Todd never discussed with his father any terms of agreements between John and Jeff.

26. Defendant's position does not fit comfortably within the constraints of prevailing Rule 12(c) standards. First, the Amended Complaint contains specific factual allegations that Exhibit B controls and that any modification to Exhibit C is therefore not relevant in the first instance. Second, Plaintiff should be deemed to have denied Defendant's allegation that the brothers reached an oral modification. A response stating that Plaintiff does not have information adequate to admit or

deny Defendant's allegations "has the effect of a denial." N.C. Gen. Stat. § 1A-1, Rule 8(b) (2015). Defendant suggests that Rule 8 cannot protect Plaintiff when the pleadings, taken as a whole, demonstrate that Plaintiff neither has, nor will be able to, develop evidence to challenge Defendant's verified statement. (Reply Mem. Law Supp. Def.'s Mot. J. Pleadings 4.) The questionable basis of that suggestion is evident by the fact that, in support of his position, Defendant cites federal Rule 12 standards that North Carolina courts have not adopted. (Reply Mem. Law Supp. Def.'s Mot. J. Pleadings 4 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009)).) *But see Holleman v. Aiken*, 193 N.C. App. 484, 491, 688 S.E.2d 579, 584–85 (2008) (rejecting the federal "plausibility" standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

27. More importantly, assuming that the trier of fact first concludes that Exhibit C is the controlling agreement, Defendant would still have the burden of proving that Exhibit C was modified. That burden has not been sustained simply because of the fact that Todd did not have conversations with Jeff about agreements between Jeff and John. There may be other evidence from which a jury may be asked to test whether Exhibit C should be applied inconsistently with its written terms because of an oral agreement.

28. In arguing their positions, the parties have each opined that the Dead Man's Statute embodied in North Carolina Rule of Evidence 601 supports their respective positions. The Court is not required to resolve that disagreement at this stage in the proceedings.

29. In sum, the Court concludes that there are well-stated pleadings that raise contested issues regarding first, whether Exhibit C is the controlling agreement, and if so, whether Exhibit C was modified by an oral agreement. Those contested issues should not be resolved solely on the pleadings.

## VI. CONCLUSION

30. For the reasons stated above, Defendant's Motion for Judgment on the Pleadings is DENIED.

IT IS SO ORDERED, this the 30th day of December, 2016.

/s/ James L. Gale
James L. Gale
Chief Business Court Judge