Ward v. FSC I, LLC, 2016 NCBC 91.

STATE OF NORTH CAROLINA

COUNTY OF JOHNSTON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 274

TODD WARD and TERRY KALLAM, )
Derivatively on Behalf of the )
RIVERWOOD ATHLETIC CLUB )
COMMUNITY ASSOCIATION, INC., )
        Plaintiffs, )
 )
        v. )
 )
FSC I, LLC, FRED SMITH COMPANY, )
FRED J. SMITH, JR., and REID M. )
SMITH, )
        Defendants. )

**AMENDED OPINION
AND ORDER**

THIS MATTER comes before the Court following the filing of the Report of the Independent Investigation Committee ("Committee") on behalf of the Riverwood Athletic Club Community Association, Inc. ("Report"). On August 3, 2016, the Court held a hearing on the Report.

THE COURT, having considered the Report, briefs in support of and opposition to the Report, the arguments of counsel and other appropriate matters of record FINDS and CONCLUDES that the Report should be adopted and this action should be discontinued and DISMISSED with prejudice.

INTRODUCTION

1. This is a derivative lawsuit filed by two members of the Riverwood Athletic Club Community Association, Inc. ("RACCA"), a nonprofit community association under the North Carolina Nonprofit Corporation Act, N.C. Gen. Stat. §§ 55A-1-01 *et seq.* RACCA contracted with the Fred Smith Company ("FSC") to provide certain amenities to the community, as well as management and maintenance

services to RACCA. Under the contract, FSC collected fees directly from RACCA members for the amenities and services it provided. In this action, Plaintiffs claim that FSC breached the contract by collecting fees from members to which FSC was not entitled, and that FSC converted those fees to its own use. Plaintiffs also claim that Reid Smith, an officer and member of the board of directors of RACCA, breached a fiduciary duty to RACCA by failing to prevent FSC from collecting fees to which it was not entitled and by failing to maintain and utilize RACCA's funds in the best interests of RACCA.

2. After the lawsuit was filed, RACCA moved the Court to stay the action and approve appointment of an independent committee to determine whether it was in the best interest of RACCA to pursue the claims in the lawsuit. The Court stayed the action and approved appointment of the Committee. The Committee completed an investigation and filed the Report with the Court. The Committee determined that pursuing the derivative claims raised by Plaintiffs was not in the best interest of RACCA. Accordingly, pursuant to N.C. Gen. Stat. § 55A-7-40, the Court must now determine whether this action should be continued or should be dismissed.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

3. Plaintiffs Todd Ward ("Ward") and Terry Kallam (collectively "Plaintiffs") are members of RACCA, a non-profit corporation serving as the community association for the Riverwood community in Johnston County, North Carolina. RACCA was formed in July, 2001, pursuant to the Declaration of Covenants, Conditions and Restrictions for Riverwood Athletic Club ("Covenants"),

in which Defendant Fred Smith Company is alleged to have been one of the declarants.[1] Pursuant to the Covenants, residents of Riverwood are provided with memberships in an on-site club and provided access to other full service athletic, swim, and golf clubs affiliated with other Fred Smith communities in the Triangle. The Covenants require the members of RACCA, including Plaintiffs, to pay club membership fees in the form of homeowners assessments.

4.     On or about January 1, 2011, RACCA and FSC entered into the Community Association Management, Common Area Maintenance, Sports Club and Maintenance Free Neighborhood Agreement ("Service Agreement"; Defs. Answers Exhs. A.) Under the Service Agreement, FSC provides management services to RACCA including financial services such as invoicing and recording of assessments ("Management Services"), maintenance of common areas ("CAM Services"), and enhanced maintenance for certain "maintenance free" townhome neighborhoods ("MFN Services"). The Service Agreement also required FSN to provide residents with the club memberships in the on-site and other FSC affiliated clubs in exchange for a membership fee ("Amenities Fee"). FSC was entitled, pursuant to the Service Agreement, to fees for the services and club memberships as follows:

> 8. _MANAGEMENT SERVICES, CAM SERVICES, AND AMENITIES FEE_. In consideration for the Management Services, CAM Services and Amenities, RACCA agrees to pay FSC:
>
>> a.  For the period between January 1, 2011 and December 31, 2011, the sum of

---

[1] Defendant FSC I, LLC is alleged to have done business as Fred Smith Company at all times relevant to the allegations in the Complaint.

i. An amount equal to the total number of Units[2] multiplied by Fifty-Five and No/100 Dollars ($55.00); and

ii. An amount equal to the total number of currently or previously inhabited residential structures in the Community where the Owner or Owners of said residential structures have opted out of a Bronze Membership in the Club in writing multiplied by Thirty and No/100 Dollars ($30.00); and

b. For each annual period beginning January 1, 2012, and thereafter, an amount equal to or greater than the amount referenced in paragraph 8(a) above mutually agreed between the Board and FSC.[3]

All such amounts shall be due and payable on the 1st day of each month; provided, however, FSC shall have the right to collect and retain the fees set forth herein directly from the Owners.

9. _MFN SERVICES FEE_. In consideration for the MFN Services, RACCA agrees to pay FSC:

a. For the period between January 1, 2011, and December 31, 2011, an amount equal to the total number of occupied Units in the MF Neighborhoods multiplied by Forty-Five and No/100 Dollars ($45.00); and

b. For each annual period beginning January 1, 2012, and thereafter, an amount equal to or greater than the amount referenced in paragraph 9(a) above mutually agreed to between the Board and FSC.[4]

All such amounts shall be due and payable on the 1st day of each month; provided, however, FSC shall have the right to collect and retain the fees set forth herein directly from the Owners.

---

[2] The Service Agreement defines a "Unit" as "a 'currently or previously inhabited residential structure in the Community, including but not limited to any MF Neighborhood Unit, but saving and excepting a Unit where the Owner or Owners of said Unit have opted out of the Bronze Membership in the Club in writing.'"

[3] The amounts collected pursuant to 8(a)(i) increased to $56.00 in 2012, $57.00 in 2013, and $58.00 in 2014 and 2015.

[4] The amounts collected pursuant to 9(a) increased to $46.00 in 2012, and $47.00 in 2013, 2014 and 2015.

(Service Agreement ¶¶ 8–9.) Pursuant to the Service Agreement, FSC collected the assessments due to RACCA directly from the homeowners and retained them to pay the fees for the services and club memberships.

5.      FSC's collection of assessments from members of RACCA under the Service Agreement forms the basis of this action. Plaintiffs contend that under the terms of the Service Agreement, FSC was only entitled to collect a single, annual payment in the amounts specified, but instead collected these payments on a monthly basis, resulting in a significant overpayment. Specifically, Plaintiffs allege the following:

> The Service Agreement calls for payment by RACCA to FSC based on an annual basis. For instance, for the period January 1, 2011 and December 31, 2011, FSC is entitled to $55.00 per Unit such that if there are 1,000 Units, FSC is entitled to $55,000 for the year. Upon information and belief, FSC has collected from RACCA, and converted to its use, an amount equal to $55.00 per Unit per month thus resulting in payments to FSC in amounts that were 12 times the amounts due pursuant to the Service Agreement.

(Compl. ¶ 25(b).)

6.      Plaintiffs also contended that FSC has collected fees for unimproved lots in a manner not permitted by the Service Agreement. Specifically, Plaintiffs contend that FSC was only entitled to payment from RACCA under the Service Agreement for lots containing a residential structure as follows:

> Within the Riverwood community, certain lots may or may not contain residential structures. Owners of lots that do not contain residential structures still pay dues to RACCA pursuant to the Covenants provided that one year has elapsed since the date of the lot purchase. However, pursuant to the Service Agreement, FSC is entitled to collected fees only from lots that contain a residential structure which are defined as a "Unit" in the Service Agreement.

Despite not being entitled to collect fees for the unimproved lots, upon information and belief, FSC has collected fees from RACCA and the members of RACCA for the unimproved lots.

(*Id.* ¶ 25(a).)

7. Plaintiffs allege that prior to filing this action they brought these issues to the attention of RACCA and its Board of Directors and requested that RACCA investigate the possible overpayment of fees to FSC. On August 31, 2015, Ward's attorney sent a letter to RACCA and its Board of Directors, stating in pertinent part as follows:

> On behalf of Mr. Ward, and pursuant to the North Carolina Nonprofit Corporation Act including N.C. Gen. Stat. §55A-7-40, we are hereby kindly requesting that RACCA and its board of directors take all available steps and actions to recover funds improperly paid to, or converted by, FSC I, LLC dba Fred Smith Company ("FSC"). Specifically, Mr. Ward contends that FSC has collected funds on behalf of RACCA and converted these funds to the use of FSC under the purported authority of an agreement commonly known as the Community Association Management, Common Area Maintenance, Sports Club and Maintenance Free Neighborhood Agreement ("Service Agreement"). Mr. Ward contends that the amounts paid to FSC or collected by FSC exceed the contract amounts set forth in the Service Agreement and that RACCA has suffered harm as a result.

(RACCA's Mot. Stay Proceedings, Ex. A.)

8. The demand letter requested a response by RACCA within thirty days, and also requested an inspection of RACCA's records. (*Id.*)

9. On September 30, 2015, RACCA, through counsel, notified Ward's attorney that the RACCA Board of Directors would form an independent committee to investigate the issues raised in the August 31 letter and would conduct an audit of RACCA's finances. (RACCA's Mot. Stay Proceedings, Ex. B.) In response, Plaintiffs

sent a follow-up letter requesting the results of RACCA's investigation by November 13, 2015, due to concerns regarding the running of the statute of limitations. On November 9, 2015, RACCA notified counsel for Plaintiffs that the committee had not yet met due to scheduling conflicts, and Plaintiffs requested that the results of any investigation be submitted by November 30, 2015.

10.     In the course of its investigation, the investigative committee sought to retain a forensic accountant to audit the accounts of RACCA. Ultimately, the investigative committee was forced to retain a second accountant after a potential conflict of interest was discovered with the first accountant hired. On December 15, 2015, RACCA notified Ward's attorney that the audit was expected to be completed by the end of January 2016. Nevertheless, on January 27, 2016, before receiving the results of the audit, Plaintiffs filed their Complaint. Based on RACCA's contention that the allegations in the Complaint differed from the concerns raised in the demand letter, the investigative committee put the investigation "on hold," pending further direction of the Court.[5] (RACCA's Mot. Stay Proceedings ¶ 19.)

11.     On April 1, 2016, RACCA filed a Motion to Intervene and a Motion to Stay/Motion to Appoint Committee ("Motion to Stay").  In the Motion to Stay, RACCA requested that the Court stay this action pursuant to N.C. Gen. Stat. § 55A-7-40(b) (hereinafter references to the North Carolina General Statues will be to "G.S.") to

_____

[5] Before putting the investigation on hold, however, the committee discovered a discrepancy between the Covenants and the Service Agreement and determined that RACCA had been paying fees to FSC for certain unimproved lots for which RACCA did not owe a fee. Based on this discovery, FSC reimbursed RACCA for improperly collected fees in the amount of approximately $24,200. The reimbursement was related only to the fees alleged in paragraph 25(a) of the Complaint, and not the fees alleged in paragraph 25(b).

allow the investigation of Plaintiffs' claims to be completed, and that the independent committee previously appointed by RACCA be approved by the Court to complete the investigation. On April 18, 2016, Plaintiffs filed a response opposing the Motion to Stay. On May 11, 2016, following a hearing, the Court entered an order approving appointment of the Committee and staying this matter to allow the Committee to conclude its investigation and report the results to the Court. The Court also held in abeyance RACCA's Motion to Intervene.

12. On May 13, 2016, RACCA filed a Motion to Substitute seeking to replace one member of the Committee with a new member based on a conflict of interest that had developed for one of the original Committee members. Neither Plaintiffs nor Defendants opposed the Motion to Substitute, and on May 16, 2016, the Court granted the motion.

13. On July 13, 2016, RACCA filed the Report. The Report was prepared by RACCA's counsel and verified by each of the three members of the Committee. The Report was twelve written pages in length and accompanied by numerous sworn affidavits, written responses to the Committee's inquiries, and other relevant documentation. The Report stated that the "sole, remaining question in dispute is (*sic*) the allegations made by Plaintiffs that the provisions of paragraph 8 and 9 of the Service Agreement provide for payment to FSC of (*sic*) an annual rather than monthly basis" and framed its task as determining "whether [the Committee] believed the Plaintiffs' Claims were valid, or likely to prevail, and whether it was in the best

interest of the members to expend the Association's funds to pursue those claims." (Report 5-6.)

14.     In making its determination, the Committee interpreted the language of the Service Agreement based on the intentions of the parties and by the course of dealing between the parties under the Service Agreement. The Committee reviewed affidavits from Fred Smith, Jr., on behalf of FSC, and from the three individuals who comprised the RACCA Board of Directors at the time the Service Agreement was executed and approved by the Board.  All four witnesses testified by affidavit that they intended that the fees called for under sections 8 and 9 of the Service Agreement were to be paid on a monthly, rather than an annual, basis. The Committee also considered evidence that established that since the execution of the Service Agreement, FSC had collected and RACCA had paid, the required fees on a monthly basis.  The Committee also received evidence that "the previous version of the Service Agreement in 2006 was substantially identical and the parties always conducted themselves in accordance with an interpretation that provided for monthly payments of the management fees." (Report 10-11). The Committee also considered the fees paid by residents of surrounding communities for similar services and amenities, and determined that the fees paid by members of RACCA, even when considered on a monthly basis, were substantially lower than fees paid in other communities. (*Id.* 11-12.) Based on its investigation, the Committee determined that "it is not in the best interest of [RACCA] to pursue the claims proffered by Plaintiffs in this case." (*Id.* 12.)

15. On July 15, 2016, Plaintiffs filed their Response to Filing of Committee Investigative Report, in which they request that the Court reject the Report and the Committee's recommendation that this action not proceed. Plaintiffs contend that the Report was improperly prepared by RACCA and its counsel and not by the Committee, that FSC did not provide the Committee with any "financial records", that the Committee's request for information to Plaintiff's was inadequate, and that the Report made "flawed" legal arguments and relied on inadmissible, extrinsic evidence in interpreting the Service Agreement

16. Based on these contentions, Plaintiffs request that this Court disregard the Report, deny RACCA's Motion to Intervene, and allow this case to proceed on the Complaint as-filed. In response, Defendants also filed their respective positions on the Report, in each case requesting that the Report be adopted and this action be dismissed based upon the Committee's conclusions.

## DISCUSSION

17. This matter is before the Court pursuant to G.S. § 55A-7-40(c), which provides as follows:

> Upon motion of the corporation, the court may appoint a committee composed of two or more disinterested directors or other disinterested persons, acceptable to the corporation, to determine whether it is in the best interest of the corporation to pursue a particular legal right or remedy. The committee shall report its findings to the court. After considering the report and any other relevant evidence, the court shall determine whether the proceeding should be continued.

18. The Committee reached the conclusion that pursuing the legal rights and remedies being sought by Plaintiffs in this lawsuit was not in the best interests

of the corporation. Accordingly, the Court believes the issue that must be decided is whether the Committee properly reached this conclusion. Unfortunately, neither the statute nor our appellate case law provide express guidance as to the standard to be applied by the Court in making this decision.

19. Defendants argue that the Court should apply the standard provided for in the parallel provision of North Carolina's Business Corporation Act, G.S. § 55-1-01 *et seq*. Under the Business Corporation Act, a court "shall dismiss a derivative proceeding on motion of the corporation" if an independent quorum of directors or an independent committee appointed by the directors or by the court "determines in good faith after conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the derivative proceeding is not in the best interest of the corporation." G.S. § 55-7-44(a). If the Court applies the standard suggested by Defendants in deciding whether a committee has fulfilled its duty a court must determine (a) whether the directors or committee were independent, (b) whether it conducted a reasonable inquiry, and (c) whether the determination was made in good faith. *Borchardt v. King*, 2015 U.S. Dist. LEXIS 10604, *21 (M.D.N.C. January 29, 2015); *Madvig v. Gaither*, 461 F. Supp. 2d 398, 404 (W.D.N.C. 2006).

20. In the absence of appellate interpretation of the comparable provisions in Chapter 55A, Defendants urge the Court to adopt the same standard in considering the Report under G.S. § 55A-7-40(c). Plaintiffs have not provided any argument regarding the standard to be applied by the Court to such review.

21.     The Court concludes that the three factor standard applied to review of an investigation by an independent committee conducted under G.S. § 55-7-44 is the proper standard to apply in an action under G.S. § 55A-7-40. While the language employed in the two statutes is not identical, the purpose of the provisions appears to be the same. Section 55A-7-40 incorporates many of the rights and obligations regarding derivative actions that are provided in Article 7 of Chapter 55 (G.S. §§ 55-7-40 – 47). Both the Business Corporation Act and the Nonprofit Corporation Act permit the corporation to conduct an investigation regarding the claims made by the plaintiff in a derivative action, permit the corporation to seek a stay of a derivative action to conduct an investigation, and authorize a court to appoint independent persons to conduct an investigation. Both statutes provide the corporation or independent committee must determine whether pursuing the derivative claims are "in the best interest of the corporation" and for a court to dismiss the derivative action based on the committee's determination. While G.S. § 55A-7-40 does not expressly state that an investigative committee must reach its conclusions in good faith and after a reasonable inquiry as does G.S. § 55-7-44, the Court sees no reason why a different standard should apply simply because RACCA is a nonprofit corporation. To the contrary, a recent decision of the North Carolina Court of Appeals addressing the standing of members of a property owners association under G.S. § 55A-7-40 to bring a derivative action against a nonprofit corporation analyzed that issue under the same principles applicable to for-profit corporations. *Anderson v. Seascape at Holden Plantation, LLC*, 773 S.E.2d 78 (N.C. Ct. App. 2015). Accordingly, the Court

will review the Committee's conclusion applying the same three criteria applied under G.S. § 55-7-44.

a. *Independence.*

22. Plaintiffs did not challenge the independence of any the Committee members in response to the Motion to Stay or the Motion to Substitute, and have not argued or presented any evidence that the members had any interests or affiliations that would compromise or call into question their independence. To the contrary, the representations regarding the independence of the Committee members provided to the Court at the time each of the members was approved to serve on the Committee are unrebutted. The Court concludes that that the Committee was independent.

23. Although they do not challenge the independence of the Committee members, Plaintiffs contend that the Report was not actually prepared by the Committee but rather that the Report was prepared by RACCA. Plaintiffs, however, offer no evidence in support of this bald assertion. (Pls.' Response to Report 1-2.) RACCA counsel's involvement in the preparation and submission of the Report, which was verified by each Committee member, is not grounds for disregarding the Report or its conclusions, and has been permitted in a variety of other cases. *See, e.g.*, *Madvig*, 461 F.Supp. 2d at 408 (finding no conflict where special investigation committee used the same counsel that previously represented corporate audit committee in SEC investigation). Aside from noting that RACCA's counsel assisted the Committee, Plaintiffs do not suggest, and nothing in the record shows, that RACCA counsel exerted any undue or improper influence over the outcome of the

Report, or otherwise interfered with the Committee's purpose. Accordingly, this argument is without merit.

b. *Reasonable Inquiry.*

24. The Court next must determine whether the Committee conducted a reasonable inquiry into the issues before it. "What constitutes a reasonable inquiry is judged from the magnitude of the issue raised. To be reasonable, the inquiry must be commensurate in scope with the nature of the issues raised by the complainant." *Id.* at 407 (citing Russell M. Robinson, II, *Robinson on North Carolina Corporation Law,* § 17.08 (2005).). The issue considered by the Committee was a relatively narrow one: Did FSC breach the Service Agreement by collecting fees from RACCA to which it was not entitled under the Agreement?

25. With regard to the issue of whether the Service Agreement required the payment of monthly or annual fees, the Report and the evidence before the Court establishes that the Committee made inquiries of and requested information from the parties to the Service Agreement, FSC and RACCA. The Committee obtained and considered information by way of sworn affidavits from the signatories to the Service Agreement and the RACCA directors who approved the Service Agreement regarding the parties' intentions in entering into, and their course of dealing under, the Service Agreement. The Committee also obtained affidavit evidence from the parties regarding their course of dealing under the immediately preceding agreement that was in effect from 2006 until 2011. All of the evidence was that the parties intended

the fees to be paid monthly, and not annually, and that the fees had been paid on a monthly basis under both the Service Agreement and the predecessor agreement.

26.     The Report and evidence before the Court also shows that the Committee considered the fees paid by members of other, local community associations for comparable amenities and services, and determined that the monthly fees being paid by RACCA were less than the fees paid by those other associations.

27.     With regard to the payment of certain fees for unimproved lots, the Committee reviewed and compared the language in the Covenants and the language in the Separation Agreement and determined that FSC had collected fees for unimproved lots to which it was not entitled. The Committee obtained sworn affidavits from FSC that provided a detailed summary of the overpayments. As noted above, based on this information, FSC repaid to RACCA approximately $24,200 in fees improperly charged and collected for the unimproved lots.

     c.     *Good Faith.*

28.     The "question about whether the special committee acted in good faith is different from a question about the special committee's independence, but the issues often relate to the same facts." *Borchardt*, 2015 U.S. Dist. LEXIS 10604 at *37 (citing *Swenson v. Thibaut*, 39 N.C. App. 77, 107, 250 S.E.2d 279, 298 (1978)). "To determine whether the special committee acted in 'good faith,' a court is to look to 'the spirit and sincerity with which the investigation was conducted, rather than the reasonableness of its procedures on the basis for its conclusions.'" *Borchardt*, 2015 U.S. Dist. LEXIS 10604, at *34-35. "Of course, merely conducting an investigation as

a sham or pretext for papering over a predetermined outcome would not be in good faith." *Id.* at \*35-37.

29.     There is no evidence in the record that the Committee conducted the investigation or made its determination in bad faith. *Id.* at \*38 (no evidence that special committee had "made statements or taken actions that might demonstrate … bad faith."). To the contrary, the thoroughness of its inquiry supports the conclusion that the investigation was done in good faith. *Madvig*, 461 F. Supp. 2d at 409 (evidence that investigative committee "interviewed witnesses it considered relevant to the allegations, secured written statements from others, [and] closely reviewed the transactions [at issue]" establishes "thorough consideration of the potential causes of action Ingles might have had against defendants.").

         d.  *Plaintiffs' Response to Report.*

30.     Plaintiffs have not specifically framed their arguments in response to the Report as challenges to the reasonableness of the Committee's investigation or its good faith. Nevertheless, Plaintiffs first contend that the investigation is flawed because the Committee "conclude[ed] that Plaintiffs' claims in this case are not worth pursuing" despite the fact that FSC did not produce "a single financial record." (Pls. Resp. to Report 2.) Plaintiffs, however, offer no explanation of what specific records they believe should have been reviewed by the Committee, or how those records would have impacted the Committee's decision. The primary issue before the Committee was whether FSC had breached the Service Agreement by collecting fees on a monthly, rather than an annual, basis and the Committee properly focused its efforts

on determining the correct interpretation of the applicable language in the Service Agreement. FSC's "financial records" would not have aided the Committee's investigation of this issue.

31.     Plaintiffs also contend that the Committee did not "properly" make a request to Plaintiffs for information that they might possess bearing on the investigation. (Pls. Resp. to Report 2-3.) It appears to be undisputed that on June 7, 2016, RACCA's counsel, on behalf of the Committee, sent an email with a 21 page attachment to counsel for the parties involved in this lawsuit. The attachment contained letters to counsel making requests for information from the parties. The two page letter to Plaintiffs' counsel was the last two pages of the 21 page attachment, and Plaintiffs' counsel inadvertently did not see the letter and did not provide a response.  Again, however, Plaintiffs have not explained how the failure to receive the letter impacted the Committee's investigation. In fact, Plaintiffs admitted that they did not have any of the information requested by the Committee in the overlooked letter. (*Id.* 3.)

32.     Finally, Plaintiffs argue that the Committee's "legal arguments … are flawed" because the Committee considered extrinsic evidence in the form of affidavits about the parties intent in determining the meaning of the terms of the Separation Agreement. (*Id.* 3-4.).  Plaintiffs contend that consideration of evidence of the parties' intent is only permitted when the "contract terms are deemed by the court to be ambiguous", and since there has been no such finding by the Court here, the affidavits should be "inadmissible." (*Id.* 4.) As Defendants correctly point out, however, there is

nothing in the language of G.S. § 55A-7-40 that would suggest that a corporate investigative committee is bound by the rules of evidence applicable to courts, and Plaintiffs have not provided authority to support such a conclusion.

33.     Ultimately, after considering the Report and the other evidence, the Court concludes that the Committee's investigation was reasonable under the circumstances, and was conducted in good faith by disinterested individuals. Given the issues raised by Plaintiffs' derivative claims, the Court concludes that the Committee reached a reasonable determination that it is not in the best interest of the corporation to pursue the claims alleged by Plaintiffs in this lawsuit. Based on the foregoing, the Court concludes that this action should not continue and should be DISMISSED. [6]

e. *Attorneys' Fees.*

34.     G.S. § 55A-7-40(e) provides in pertinent part that "[i]f the action on behalf of the corporation is successful, in whole *or in part*, whether by means of a compromise and settlement or by a judgment, the court may award the plaintiff the reasonable expenses of maintaining the action, including reasonable attorneys' fees, …" (emphasis added). The record establishes that Plaintiffs obtained a benefit for

---

[6] To the extent Plaintiffs contend that the Court does not have authority to dismiss their derivative claims, (Pls.' Resp. to Report 5,) the Court disagrees. Although the Nonprofit Corporations Act does not contain an express provision for a nonprofit corporation to make a motion to dismiss comparable to that in the Business Corporation Act, G.S. § 55-7-44(a), the Court concludes that the language of G.S. § 55A-7-40(c) is most reasonably read as conferring the same right to dismiss, after review of the corporation's or committee's report, as is provided by the Business Corporation Act. Indeed, the language "[a]fter considering the report and any other relevant evidence, the court shall determine whether the proceeding should be continued" would appear to have no meaning at all, and be superfluous, if it does not confer such authority.

RACCA from raising their claims in the form of the approximately $24,200 in repayments RACCA received from FSC for FSC's improper collection of fees for unimproved lots. Accordingly, the Court concludes that Plaintiffs are entitle to an award of reasonable attorneys' fees pursuant to G.S. § 55A-7-40(e) for the benefit they obtained for RACCA. Plaintiffs' counsel shall file with the Court an appropriate affidavit addressing the factors properly considered by the Court in making an award, *e.g. Ge Betz, Inc. v. Conrad*, 231 N.C. App. 214, 244, 752 S.E.2d 634, 655 (2013), with supporting records so that the Court can determine the amount of such fees, which will be awarded in a separate order.

THEREFORE, it is ORDERED:

1. That based on the Report of the Committee this action is discontinued and DISMISSED with prejudice.

2. RACCA's Motion to Intervene is DENIED as moot.

3. The Court shall make an award of attorneys' fees to Plaintiffs by separate order.

4. This Amended Opinion and Order SUPERSEDES this Court's Order issued in this matter earlier today, and that Order hereby is WITHDRAWN.

SO ORDERED, this the 2nd day of December, 2016.


/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
for Complex Business Cases